ANDERSON *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—RISKS ASSUMED—RAILROADS—ROADBED AND TRACKS.

There was no evidence tending to show that a derailment of a freight car, which collided with a pile of lumber near defendant's switch, killing plaintiff's decedent, was the proximate result of the switch being built on made ground on low land near the river, in an action for negligent death under the survival act, wherein it merely appeared that the rails at the joint near the place of derailment settled about two inches when a car passed over them; but in any event decedent, who had known the condition of such ground for several years, assumed any risk arising from that mode of construction.

2. SAME.

Nor was there any evidence to warrant the trial court in submitting to the jury the questions whether the track was properly ballasted, or the joints thereof were upon a reasonably firm foundation.

3. SAME.

Any lack of evidence that defendant claimed appeared in plaintiff's case upon the issue of the existence, at the time of decedent's injury, of defects discovered by plaintiff's witnesses a week later, was supplied by defendant's showing that when the track was repaired, after the accident, no change was made in the track, that it was merely restored to its previous condition.

4. Same—Track—Gauge.

It was for the jury to say whether or not it was negligent for defendant to construct the track of the switch from one-half to nine-sixteenths of an inch narrower than the standard width upon the curve where decedent was killed.

5. Same—Railroads—Lumber Piled Beside Rails—Switches.

Where lumber was piled at the usual and convenient distance from the switch and could not reasonably have been piled at such a distance as to have prevented collision with a derailed car, no negligence could be predicated upon the location of the lumber pile.

6. Same—Contributory Negligence—Personal Injuries.

The question of plaintiff's contributory negligence, in riding on the side of the car at the forward end upon the outside of the curve so that he was invisible to the engineer or fireman, was for the jury.

7. Same.

And it was for the jury to say whether the derailment occurred by reason of the car's running over a piece of scantling that was afterwards found beside the track and bore marks of a car wheel.

Error to Bay; Collins, J. Submitted June 12, 1911. (Docket No. 35.) Decided September 29, 1911. Rehearing denied March 30, 1912.

Case by Anna M. Anderson, administratrix of the estate of Louis F. Anderson, deceased, against the Michigan Central Railroad Company, for the negligent injury and death of decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Humphrey, Grant & Baker*, for appellant.

*Hall, Defoe & Henry*, for appellee.

BROOKE, J. Plaintiff's decedent, a man of 49 or 50 years of age, had been employed by the defendant company as brakeman and switchman for upwards of 20 years, and as switchman in defendant's yards at Bay City for 18 years. Along the river, in the vicinity of Bay City, the banks are exceedingly low. Where those banks have for many years been occupied by lumber manufac-

turing plants, it has been the custom to deposit slabs, edgings, and other mill refuse upon the banks of the stream, thus raising the level of the bank, and making ground upon which the product of the sawmills was piled.   Over the ground thus filled in, defendant laid sidings into many Bay City mills, for the purpose of delivering logs to the mills and removing the manufactured lumber therefrom.   The ground about the Richardson Lumber Company plant was thus filled in many years ago, and about the yard are several tracks and switches laid upon this so-called "made ground."   The track upon which plaintiff's decedent lost his life was constructed in November, 1907.

On April 3, 1909, plaintiff's decedent was a member of a switching crew which had been handling cars over this track for many months.   On that day the crew attempted to move a car, partially loaded with lumber, from where it stood upon a curve, to another position in the yard.   The switch engine, after making a coupling, came to rest, and, while it was standing still, plaintiff's decedent walked forward to the front end of the car and climbed up into the stirrup, holding onto the ends of the boards, which were piled unevenly to a height of about 10 feet from the top of the flat car.   He took this position on that side of the car, on the outside of the curve, where he could not be seen by either the engineer or fireman.   The conductor and the other switchman remained on the inside of the curve. The engineer started to push the car forward in the usual manner, but had gone but a few feet when the front wheels of the front truck climbed the right-hand rail on the outside of the curve, and, after running from 4 to 7 feet, with the flange on top of the rail, it dropped off to the right and ran along on the ties for a few feet, until the front right-hand corner of the car came in contact with a pile of lumber alongside the track.   As plaintiff's decedent was standing in the stirrup on this corner of the car, he was crushed between the lumber on the car and

168 MICH.—14.

the pile alongside the track, receiving injuries from which he died the same day.

Plaintiff charged the defendant with negligence in the following particulars:

" (1) In that it omitted to provide, keep, and maintain in such yard a reasonably safe side track for such locomotive and cars to operate upon.

" (2) In that it omitted to provide, keep, and maintain in such yard a side track having a reasonably safe substructure for such locomotive and cars to operate upon.

" (3) In that it constructed and maintained said side track with the curve therein having sudden and abrupt departures from a uniform line.

" (4) In that it omitted to construct and maintain said side track with the outer rails of the curve thereof of a reasonably regular and established elevation.

" (5) In that it omitted to place, keep, and maintain ballast upon the surface and under said side track to make the same reasonably firm and solid.

" (6) In that it omitted to construct and maintain the rails of said side track of a reasonably uniform gauge.

"(7) In that it omitted to construct and maintain the joints in the rails of said side track upon a reasonably firm and solid foundation, so that they would not unduly depress when the said locomotive and cars were run over the same.

"(8) Having provided, constructed, kept, and maintained such side track with its substructure unsafe for locomotives and cars to operate upon, with a curve therein having sudden and abrupt departures from a uniform line, with the outer rail wanting in a reasonably regular and established elevation, without ballast or uniform gauge, with the outer rails of an irregular elevation and the joints therein having a foundation wanting in firmness and solidity, in that it omitted to require said lumber company, in piling its said lumber, to place the same at such reasonable distance from the rails of said track that when the cars thereon would mount and leave the same they would collide with such piles."

The son of plaintiff's decedent, in describing a portion of the track which the car passed over before it left the rail, testified in part as follows:

" I noticed the condition of the track and rail at a point

about· 400 feet east of the switch track on April 4th. There had not been any change in. the track with reference to the rails and ballast when I went down there to take measurements on the 10th, a week from the accident.

"*Q.* Is this the time you saw cars being moved in, at one time?

"*A.* Yes; it is.

"*Q.* Did you notice on this day, also, the condition of the rails with reference to any joints, or joint, rather?

"*A.* I did. There was a joint in this track just before you got to the lumber pile, west from it. It was the inner rail. That would be the south rail. As you go in on the track, it first curves to the right; then it curves to the left. I made measurements to see how far this joint was from the switch where I started. It was 396.4 feet, as I remember it. That joint was a couple of inches lower than the rail opposite or across the track. That joint came between two ties. I measured the gauge or distance between the rails where that joint was, and found it was 4 feet $8\frac{7}{16}$ inches. The track did not keep that gauge as it went east. At a point a foot and one-half east of the joint the gauge was four feet nine inches and three-sixteenths. It was three-quarters of an inch wider at that point than a foot and a half back. I noticed marks on the left-hand rail, beginning east of the joint, 411 feet from the switch. That was where it left the rail. The mark was about 7 feet long and began 404 feet from the switch. That was the mark on top of the rail made by the flange leaving the rail. I followed that mark, and it led right to where the wheel had passed off the track. The marks on the ties show where the wheel passed off. The mark commences on the inside of the left-hand rail and travels about 7 feet diagonally across and towards the outside part of the rail. I measured and found the distance from the switch to where the lumber pile begins was 418 feet. The lumber pile was about 12 feet wide, so that it lay between a point 418 and 430 feet from the switch. When I was there on the 10th, I saw several cars pushed in there over this joint. They were pushed in by the locomotive, so that the locomotive was on the west end. Some of those cars were loaded. I would not say they all were. The first car farthest from the engine was loaded with logs. When that car passed over the joint, I stood just south of the joint opposite it, and about six or eight feet from the

track. There was nothing between me and the joint to interfere with seeing what took place.

"*Q.* As the right-hand front wheel or trucks would pass over the joint, did you notice the effect on the opposite truck?

"*A.* They had a tendency to raise.

"*Q.* How much did the track settle at the joint as the car of logs passed over it?

"*A.* We had no way of measuring it, but I should say a couple of inches, two or three inches. * * * They fixed that track in there since the accident. I do not claim there is any different ground on the rail under the rail next to the river than there is under the east rail. It is just about the same—the same material. I say the outside rail raised and the inside one went down. It may have gone down, and it may have been stationary for all I know; but I know the train swayed when they went in there, which gives me the idea that the outside rail did not go down as far, or it did not go down at all as the inside rail; the inside rail went down the farthest."

Plaintiff offered no testimony tending to show that the existence of the alleged low joint or of a track gauge of 4 feet $8\frac{7}{16}$ inches would tend to cause the derailment. Upon cross-examination of one of defendant's witnesses, however, it appeared that the proper gauge upon a straight track was 4 feet $8\frac{1}{2}$ inches, and upon a 10-degree curve (such as the one in question) 4 feet 9 inches. This witness testified further:

"On a curve anything up to a 10-degree curve can be carried around on 4 feet $8\frac{1}{2}$ inches with safety. We do not on a curve ever reduce the gauge below 4 feet $8\frac{1}{2}$ inches. It would not be prudent to construct a standard-gauge railroad on a curve with the gauge less than 4 feet $8\frac{1}{2}$ inches at any place in it. If it were constructed of a narrower measurement than 4 feet $8\frac{1}{2}$ inches, it would bind the drivers of the engine, and the consequence would be that it would either turn the rails over or the engine would go off the track. The engine would not have sufficient gauge to carry it. The engine would go off from the rails spreading more than any other reason, with the proper flange. I do not know of anything that might contribute to make it go off, other than the rails spreading."

It appeared affirmatively that the siding in question was built upon the same kind of "made ground" as were many others in the vicinity, and that plaintiff's decedent was thoroughly familiar with this fact. It further appeared that the track was ballasted in the ordinary way for such tracks. Plaintiff offered no proof tending to show that the pile of lumber with which the car collided was piled too close to the track; in fact, the record conclusively shows that it was piled at a safe distance from the track, in the ordinary operation of the road. Defendant's motion for a directed verdict at the close of plaintiff's case was denied. It then showed that the track in question was properly constructed and of the proper gauge at the point in question, when constructed.

The record showing the foregoing facts, the court charged the jury in part as follows:

" It is alleged by the plaintiff in her declaration in this cause that it is the duty of defendant:

"(1) To keep and maintain a reasonably safe side track for its locomotives and cars to operate on.

"(2) To provide, keep, and maintain side tracks having a reasonably safe substructure for the locomotives and cars to operate on.

" (3) To construct and maintain its side tracks without curves having sudden and abrupt departures from a straight line.

" (4) To construct and maintain side tracks with rails or curves of a reasonably regular and established elevation.

" (5) To keep and maintain the ballast on said side track in a reasonably firm and solid condition.

" (6) To construct and maintain the rails of its side tracks of a reasonably uniform gauge.

" (7) To construct and maintain the joints and rails of the side tracks upon a reasonably firm and solid foundation.

" (8) To require lumber companies in piling lumber to place the same a reasonable distance from the rails of the side track, so that when the cars would mount or leave the rails they would not collide with the piles.

" A breach of each one of these several allegations of duty is alleged in the said declaration, and I charge and

instruct you that the plaintiff, having the affirmative of the case, assumes the burden of showing that, as a matter of law, these duties are imposed upon and assumed by said defendant, and also to prove by a preponderance of the evidence in the case a breach of one of these duties, and that the breach of such duties so imposed by law was the proximate cause of the accident resulting in the injury and death of plaintiff's decedent."

We think the court was in error in submitting to the jury the question of defendant's negligence as to points numbered 5, 7, and 8. Not only is there no evidence tending to show that any alleged insufficiency in the foundation of the track caused or intended to cause the derailment, but plaintiff's decedent, through his long experience, had become thoroughly acquainted with the fact that all, or at least many, of the side tracks in this vicinity were built upon this so-called "made ground," and he must be held to have assumed the risk, if any, which arose from this character of construction.

It is urged by defendant that there is no evidence that the claimed defects in the track existed at the time of the accident. It is true the measurements sworn to were taken a week after the accident, but defendant itself offered proof to the effect that in repairing the track after the accident no change had been made, but that it had only been put back in the condition it was at the time of the accident.

We think under the evidence as it appears in this record the question of defendant's negligence in permitting a gauge of less than 4 feet 8½ inches upon this curve was properly submitted to the jury. Whether in fact it did permit such a gauge was for the jury, and, if it did exist at the time of the accident, was that fact the proximate cause of the derailment.

No negligence on the part of defendant can be predicated upon the location of the lumber pile with which the car collided. It was piled at the usual and convenient distance from the track, and plaintiff's decedent had

worked beside such piles for many years.  It would be obviously impossible to hold that lumber should be piled at such a distance from the track that a derailed car could not collide with it.  The car in question was 40 feet long, and it is possible that it might have been so operated as to come in contact with a pile of lumber that distance from the track.

We are asked to hold that plaintiff's decedent was guilty of contributory negligence, as a matter of law, in assuming the position he took upon the car.  We cannot so hold.  In the light of the actual occurrence, it is clear that he selected the only place upon the car where there was possibility of injury, but when he took that position it was one of apparent safety, and but for the derailment, which we do not think he was bound to anticipate, it would have remained safe.  No duty called him to this . particular spot on the car, but the record shows that in switching in the yards switchmen customarily ride wherever it is handiest to get on.  The distance to be traveled is usually short, and the movement of the cars slow.  A prudent man situated as was plaintiff's decedent might have selected a safer place, but his negligence must be determined by the jury.

Defendant urges that it offered the only intelligent solution of the question as to what caused the derailment.  The finding of a piece of scantling alongside the track, at the point of derailment, bearing marks indicating that the car wheel had passed over it, is indeed persuasive evidence that this stick was the proximate cause of the accident.  That theory was, however, submitted to the jury and apparently rejected.  The cause of the derailment is a question of fact.

The judgment is reversed, and a new trial ordered.

OSTRANDER, C. J., and BIRD, BLAIR, and STONE, JJ., concurred.